UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXIS MIDDLETON,          )<br>                            )<br>         Petitioner,       )<br>                            )       Civil Action No.<br>   v.                       )       24-12334-FDS<br>                            )<br>NELSON ALVES,              )<br>                            )<br>         Respondent.       )<br>                            ) | |

## MEMORANDUM AND ORDER ON
## RESPONDENT'S MOTION TO DISMISS

**SAYLOR, C.J.**

This is a petition for a writ of habeas corpus brought under 28 U.S.C. § 2254. Petitioner Alexis Middleton is serving a sentence of 25-32 years in Massachusetts custody for, among other things, home invasion and aggravated rape.[1] The petition alleges that his detention is unlawful because he was denied his Fifth Amendment right to due process during his trial in 2008. Specifically, the petition alleges that the prosecution withheld material evidence that the Commonwealth's DNA analysts had been suspended for serious procedural errors between petitioner's arrest and his trial.

The Commonwealth has moved to dismiss the petition as time-barred under the applicable one-year statute of limitations. *See* 28 U.S.C. 2244(d). For the following reasons, the

---

[1] On March 7, 2008, a Massachusetts Superior Court jury convicted petitioner of (1) home invasion, in violation of Mass. Gen. Laws ch. 265 § 18C; (2) aggravated rape, in violation of Mass. Gen. Laws ch. 265 § 22(a); (3) armed assault in a dwelling, in violation of Mass. Gen. Laws ch. 265 § 18A; (4) two counts of indecent assault and battery, in violation of Mass. Gen. Laws ch. 265 § 13H; (5) four counts of kidnapping, in violation of Mass. Gen. Laws ch. 265 § 26; and (6) four counts of assault and battery by means of a dangerous weapon, in violation of Mass. Gen. Laws ch. 265 § 15A. *See Commonwealth v. Middleton*, 2011 WL 4860029, at *1 (Mass. App. Ct. Oct. 14, 2011).

motion to dismiss will be granted.

**I.     Background**

The following facts are taken from *Commonwealth v. Middleton*, 2024 WL 208361 (Mass. App. Ct. Jan. 19, 2024), the Massachusetts Appeals Court's most recent decision on petitioner's motion for a new trial.

**A.     Factual Background**

**1.     Underlying Offense and Original Proceeding**

Around midnight on January 11, 2005, in Braintree, four friends returned to one of their houses to discover two masked intruders "looking for money and drugs." *Id.* at *1. The masked men proceeded to "beat all four victims, ordered them to strip naked, and bound them." *Id.* One of the men forced one of the victims to put his "penis into her mouth and perform oral sex," and he later "threatened to rape a third victim." *Id.* The intruders fled when they noticed someone pulling into the victims' driveway. *See id.*

Because the intruders escaped and were wearing masks, the victims were unable to identify them for police. *See id.* But law enforcement collected several DNA samples, including from the rape victim's mouth. *See id.* at 2. Carol Courtright, a criminologist working at the Massachusetts state police crime laboratory, conducted an initial analysis of the victim's sample; Hilary Griffiths, a DNA analyst, "developed a DNA profile" for each suspect; and Rachel Chow, another DNA analyst, matched petitioner's profile to the DNA from the victim's mouth. *Id.* The DNA evidence, together with wiretap evidence and the testimony of a cooperating witness, led to petitioner's arrest and indictment. *See id.* at *1-2.

After he was indicted in March 2005, petitioner "made pretrial discovery requests for 'background information' about each person involved in conducting or reviewing DNA testing in the case." *Id.* at 2. In response, the Commonwealth provided information on Hilary Griffiths

and Rachel Chow, the two DNA analysts involved in his case, which included their proficiency test results and resumes. *See id.*

At trial, the Commonwealth did not call Griffiths or Chow, but instead called the supervisor of the DNA unit, Caitlin Drugan, to testify about the DNA match. *See id.* On March 7, 2008, a jury found petitioner guilty of multiple charges including home invasion and aggravated rape. *See id.*; (ECF 17 Ex. A at 14).

Petitioner filed both a direct appeal and a motion for a new trial in the Superior Court. (ECF 1 at 3). The direct appeal was based on petitioner's lack of opportunity to confront Griffiths and Chow at trial. *Commonwealth v. Middleton*, 2022 WL 3330394, at *2 (Aug. 12, 2022). The motion for new trial was based on the Commonwealth's failure to produce the personnel files of Griffiths and Chow. *Id.* The Superior Court denied the motion for a new trial, that decision was consolidated with petitioner's direct appeal, and the Massachusetts Appeals Court affirmed the trial court on both grounds. *See Commonwealth v. Middleton*, 2011 WL 4860029, at *3 (Oct. 14, 2011). The Supreme Judicial Court denied review. *Commonwealth v. Middleton*, 461 Mass. 1109 (2012).

### 2. Issues at Massachusetts Crime Laboratory

During the period between petitioner's arrest and trial, the Commonwealth was confronting systematic issues at the state police crime laboratory. (ECF 17 Ex. A at 42-45). On June 29, 2007, the Commonwealth released a public report that found multiple longstanding quality control problems at the laboratory. (ECF 17 Ex. A at 118-172). Petitioner contends that he did not receive a copy of the report until 2009, after the conclusion of his trial. (ECF 18 at 3).

The issues described in the report implicated the analysts involved in petitioner's case. On January 4, 2006, Carol Courtright was suspended from handling evidence because she had

cross-contaminated certain samples with her own DNA.  (ECF 17 Ex. A at 44).  On July 31, 2006, Hilary Griffiths was suspended because of "DNA testing discrepancies" that resulted from "mislabeling, sample switching[,] and transcription errors."  (ECF 17 Ex. A at 44, 49).  On September 15, 2006, Rachel Chow was suspended from handling evidence pending further training.  (ECF 17 Ex. A at 117).

No information related to those suspensions or the underlying errors was produced to petitioner in response to his discovery requests, and therefore he was tried without the benefit of that potential impeachment evidence.  Petitioner contends that he learned about the suspensions in response to a Freedom of Information Act request he made at some point after 2014, while he was incarcerated.  (ECF 18 at 3).  On October 17, 2018, he received a FOIA response that included a September 2006 memorandum suspending Chow from handling evidence.  (*Id.* at 4).

### 3. Second Motion for New Trial and Appeal

On September 3, 2019, petitioner filed a second motion for new trial in the Superior Court.  (ECF 1 at 4).  The Superior Court denied the motion based on an incomplete assessment of the applicable law, and the Appeals Court remanded for reconsideration.  *See Middleton*, 2022 WL 3330394, at *3.  The Superior Court again denied petitioner's motion, and the Appeals Court affirmed.  *See Middleton*, 2024 WL 208361, at *4.  On March 14, 2024, the SJC denied review.  *See Commonwealth v. Middleton*, 493 Mass. 1108 (2024).

### B. Procedural Background

On September 11, 2024, petitioner filed a petition for writ of habeas corpus with this Court.  (ECF 1).  On November 11, 2024, respondent filed a motion to dismiss the petition as time-barred.  (ECF 16).

## II. Standard of Review

A motion to dismiss a petition for a writ of habeas corpus may be granted when the facts alleged by petitioner fail to state a claim upon which relief can be granted. *See Pocaro v. United States*, 784 F.2d 38, 40 (1st Cir. 1986). However, those facts are accepted as true "except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* (citing *Mack v. United States*, 635 F.2d 20, 26-27 (1st Cir. 1980)).

## III.    Analysis

Federal law imposes a one-year limitations period for habeas petitions filed by state prisoners. *See* 28 U.S.C. § 2244(d). The limitations period ordinarily runs from the time that the state-court judgment of conviction becomes final, either "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). But the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" does not count toward calculation of the limitations period. 28 U.S.C. § 2244(d)(2).

The law provides exceptions to the one-year limitations period where an untimely filing was caused by specific kinds of delay not attributable to the petitioner. 28 U.S.C. § 2244(d)(1). Under § 2244(d)(1)(B), the limitations period does not begin running until "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." While there is not an explicit diligence requirement, if a petitioner could have used "garden-variety diligence" to obtain the information, there is no state-created impediment to filing a habeas petition. *See Wood v. Spencer*, 487 F.3d 1, 7 (1st Cir. 2007). In addition, equitable tolling of the limitations period may be available when "extraordinary circumstances"

beyond the petitioner's control prevented the prompt filing of the petition. *Cordle v. Guarino*, 428 F.3d 46, 48 (1st Cir. 2005).

Here, the SJC denied review of petitioner's direct appeal on March 5, 2012. *Commonwealth v. Middleton*, 461 Mass. 1109 (2012). Under § 2244(d)(1)(A), petitioner had until March 5, 2013, to file a federal habeas petition. Petitioner contends that he could not file a habeas petition during that time because at the time of trial the Commonwealth improperly failed to disclose the information related to the personnel issues at the state crime laboratory, and he did not learn about the issue until 2018. (ECF 1 at 5). However, the Court need not decide whether the limitations period was, in fact, tolled during any period prior to 2018. Even assuming the limitations period began to run on the date petitioner received the information, his claim is still time-barred.

Petitioner acknowledges that on October 17, 2018, he received a response to his FOIA request that included a copy of the memorandum to Chow informing her that she was being suspended for mishandling evidence. (ECF 18 at 4). Once petitioner received that memorandum, there was no further impediment to the filing of a claim based on the failure to disclose the evidence. *See Wood*, 487 F.3d at 7. On September 3, 2019, petitioner filed a motion for a new trial. (ECF 17 Ex. A at 16). That filing tolled the limitations period until state review was exhausted, which occurred on March 14, 2024. *See* 28 U.S.C. § 2244(d)(2); *Commonwealth v. Middleton*, 493 Mass. 1108 (2024). Petitioner filed the habeas petition on September 11, 2024. (ECF 1).

Assuming that the one-year limitation period began running on October 17, 2018, the day petitioner received the memorandum, it expired before the petition was filed. Petitioner waited 321 days—until September 3, 2019—to move for a new trial in state court. The state

proceedings concluded on March 14, 2024. The limitations period then began running again, and he had 44 days in which to file the petition—that is, until April 27, 2024. Instead, he did not file it until September 11, 2024, 181 days after the SJC denied review.

Petitioner has presented no evidence of "extraordinary circumstances" that would justify tolling the statutory period. *Cordle*, 428 F.3d at 48. Among other things, during that period, and even before he moved for a new trial, petitioner was represented by counsel. (ECF 18 at 4-5). Therefore, even assuming the limitations period did not begin to run until October 2018, the filing of the petition was outside the one-year limitations period and the petition is therefore time-barred.

## IV.   Conclusion

For the foregoing reasons, the respondent's motion to dismiss the petition for a writ of habeas corpus is GRANTED.

**So Ordered.**

Dated: April 24, 2024

/s/ F. Dennis Saylor IV  
F. Dennis Saylor IV  
Chief Judge, United States District Court